BARAN v. GOODYEAR TIRE & RUBBER CO. et al.

(District Court, S. D. New York. January 17, 1919.)

1. MONOPOLIES ⊜⟼17(1)—VIOLATIONS—SHERMAN ANTI-TRUST ACT.

The appointment by a manufacturing corporation of another corporation as its exclusive selling agent is not a violation of any right of third persons, under the common law or the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830).

2. MONOPOLIES ⊜⟼17(2)—SHERMAN ANTI-TRUST ACT—VIOLATIONS.

The refusal of a manufacturer of automobile tires and accessories, who did not have a monopoly, to sell to dealers who would not maintain suggested prices, and sold to other dealers, and not merely to consumers, is not a violation of the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830).

3. MONOPOLIES ⊜⟼17(1)—VIOLATIONS—CLAYTON ACT.

For a manufacturer of automobile tires and accessories to sell its products to manufacturers of automobiles at a less price than it sold to dealers is not a violation of Clayton Act, § 2 (Comp. St. § 8835b), forbidding discrimination in price between different purchasers, where such discrimination may tend to lessen competition, or to create a monopoly; there apparently being no competition between the manufacturer and dealers.

At Law. Action by Harold P. Baran against the Goodyear Tire & Rubber Company and the Goodyear Tire & Rubber Company, Incorporated, of New York. On demurrer to the complaint. Demurrer sustained, with leave to plead over.

See, also, 256 Fed. 570.

House, Grossman & Vorhaus, of New York City, for plaintiff.
Lewis & Kelsey, of New York City, for defendants.

AUGUSTUS N. HAND, District Judge. The plaintiff has filed his complaint seeking to recover treble damages upon two causes of action (1) under the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209 [Comp. St. §§ 8820–8823, 8827–8830]); and (2) under the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. 730). The defendants question the sufficiency of each cause of action by demurrer.

The material allegations in the first cause of action are that the first-named defendant is a large Ohio manufacturer of automobile tires and accessories, and the second defendant is engaged in selling these Goodyear tires and accessories among the several states as agent of the

Ohio company; that these defendants conspired to monopolize and to restrain trade and commerce in respect to these tires and accessories in the following way:

(1) They selected the dealers to whom they would sell the tires and accessories.

(2) Forbade these dealers so selected to sell to any other dealers, but only directly to consumers, "at the prices and upon the terms from time to time maintained, fixed and suggested by the defendants."

(3) "Did threaten, warn and notify" the dealers to whom they sold that "in the event of any violation of any of the prohibitions and requirements aforesaid they * * * would thereupon cease and refuse to sell to any such person. * * *"

(4) "Did establish a system of espionage and blacklisting in order to preclude the sale to any person * * * violating any of the prohibitions or requirements aforesaid."

(5) "Did refuse to make adjustments by way of replacements or repairs or allowances upon Goodyear automobile casings * * * through the agency of any dealers other than the persons * * * so designated, * * * thereby discriminating against and tending to eliminate the competition of dealers other than those so designated."

In pursuance of the foregoing scheme, the defendants refused to sell Goodyear automobile merchandise to the plaintiff, because he had not maintained prices as fixed and suggested, and threatened other dealers not to sell to them if they sold to plaintiff and ceased to sell to dealers who did so sell.

[1] The appointment by the Ohio company of the New York company as its exclusive selling agent is not a violation of any right under the common law or the Sherman Act. Virtue v. Creamery Package Co., 227 U. S. 8, 33 Sup. Ct. 202, 57 L. Ed. 393; American Sea Green Slate Co. v. O'Halloran, 229 Fed. 77, 143 C. C. A. 353; Locker v. American Tobacco Co., 218 Fed. 447, 134 C. C. A. 247.

[2] It is to be noticed at the outset that there is no allegation that either defendant had a monopoly in automobile tires and accessories, or even did a large percentage of the business in such goods within any part of the United States. The alleged combination or conspiracy between principal and agent, if obnoxious at law, must be so because what they have together done would have been illegal, if done by the principal alone. The real question which remains is therefore whether: A refusal of a manufacturer to sell to dealers (a) who will not maintain suggested prices, or (b) will sell to other dealers and not merely to the consumer, is a violation of the Sherman Act.

There is no restriction upon title alleged. The selected dealers who got the merchandise could do as they pleased with it. No agreement among the dealers to fix prices or restrict sales to the consumer is set forth. The sole gravamen of the action is the attempt of the defendants to prevent price cutting by refusing to sell to dealers who did not maintain the suggested price.

The enforcement of the Sherman Act, if that act were read literally, would reach nearly every commercial enterprise. To understand the act at all, we must view it in the light of the decisions. There is no

decision of an appellate court construing the Sherman Act, to which I have been referred, that prevents a single trader from rejecting a customer because he did not like the prices at which the customer resold, or otherwise disapproved of his mode of conduct. Nor does the fact that a single trader extends his policy of refusing to sell to any one of many customers who may cut prices impose any additional legal liability. It is impossible to see how a single person may choose one customer or reject one customer with impropriety, and not separately select or reject a number of customers with equal freedom.

The Circuit Court of Appeals for this circuit seems to have held that this may be done, in the case of Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 227 Fed. 46, 141 C. C. A. 594. Judge Waddill has recently passed upon this precise point on demurrer to an indictment under the Sherman Act in the decision of United States v. Colgate & Co. (D. C.) 253 Fed. 522. He there held that the Sherman Act did not reach cases where a manufacturer sold to dealers upon an agreement by each dealer to maintain a price and refused to resell to those dealers who had failed to live up to the arrangement. The first cause of action presents no facts showing a violation of the Sherman Act, and the demurrer to it must be sustained. Dueber Watch Case Co. v. Howard Watch Co., 66 Fed. 646, 14 C. C. A. 14; Whitwell v. Continental Tobacco Co., 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689; Union Pacific Coal Co. v. United States, 173 Fed. 737, 97 C. C. A. 578.

The principal case relied upon by the plaintiff is Dr. Miles Medical Co. v. Park & Sons Co., 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502. But there sales by one company to various purchasers accompanied by contracts fixing prices of resales were held unlawful restraints of trade. The vigorous dissent by Mr. Justice Holmes calls attention to the fact that if the arrangement "should make the retail dealers also agents in law as well as in name, and retain the title until the goods left their hands" it would not be denied that "the owner was acting within his rights." Here the arrangement only affected the unquestionable general right of the defendants to make future sales to such dealers as they chose. The prevailing opinion of Mr. Justice Hughes does not reach such a case as this, and to impose the restriction contended for upon a producer would inhibit his actions in choosing his customers in a way that only the clearest public policy can justify. Such a rule would make the motive of declining customers the test of legality.

It is true that Judge Hough rested his decision in Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co. (D. C.) 224 Fed. 566, upon the Clayton Act, and not the Sherman Act, because the relief sought was only possible under the former statute; but his reasoning seems applicable to the Sherman Act, and the Circuit Court of Appeals, in affirming the decree, said:

"Before the Sherman Act, it was the law that a trader might reject the offer of a proposing buyer, for any reason that appealed to him; it might be because he did not like the other's business methods, or because he had some personal difference with him, political, racial, or social. That was purely his own affair, with which nobody else had any concern. Neither the Sherman Act, nor any decision of the Supreme Court construing the same, nor the Clayton Act, has changed the law in this particular. * * *"

[3] The second cause of action, brought under the Clayton Act, is based solely upon the allegation that the defendants discriminated in the price of Goodyear supplies "between dealers (including this plaintiff) and manufacturers of automobiles, and in favor of such manufacturers." Section 2 of the Clayton Act (Comp. St. § 8835b) forbids discrimination in price between different purchasers "where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

There is nothing in the complaint to show how the alleged discrimination might substantially lessen competition, and it certainly could not tend to create a monopoly. Every manufacturer holds a monopoly in the goods of his own manufacture, but there is no allegation that the defendants have a monopoly "in any line of commerce," to use the term of the Clayton Act. Manufacturers of automobiles ordinarily would buy tires in much larger quantites than dealers, and consequently the defendants could generally afford to sell to such manufacturers at a lower price than to dealers. The manufacturers sell to dealers, and the latter to the consumer. There is apparently no competition between the manufacturers of tires and the dealers, nor is it alleged that any exists. The differentiation in price would not therefore substantially lessen competition. If such would be the effect, it must be set forth in some discernible way, and not in the mere language of the statute. There is no unreasonable arrangement set forth, nor is it made apparent how competition may be substantially lessened, or how the defendants were doing more than to select "their own customers in bona fide transactions and not in restraint of trade." More than mere sweeping conclusions in the language of the statute should be alleged to subject parties to trial. I can see no basis for the second cause of action.

The demurrer is sustained, with leave to plead over within 15 days.